**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**FARHAD ADULI, ET AL.**                    **CIVIL ACTION**

**VERSUS**                                  **NO. 23-2514**

**J.M. SMUCKER COMPANY, ET AL.**            **SECTION: D (1)**

## ORDER AND REASONS

Before the Court is a Motion to Transfer Venue Pursuant to 28 U.S.C. §1404(A), filed by The J.M. Smucker Company and Smucker Food Service, Inc. (collectively, "Smuckers").[1]  Plaintiffs oppose the Motion,[2] and Smuckers has filed a Reply.[3]  Also before the Court is a Motion to Stay Pending a Decision/Order on the Motion to Transfer Venue, also filed by Smuckers.[4]  As of the date of this Order and Reasons, the Motion to Stay is unopposed.

After careful consideration of the parties' memoranda and arguments, the evidence, and the applicable law, the Motion to Transfer Venue is **DENIED**, and the Motion to Stay Pending a Decision/Order on the Motion to Transfer Venue is **DENIED AS MOOT.**

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Farhad Aduli and Cherie Aduli, both individually and on behalf of their deceased daughter, M.A. (collectively, "Plaintiffs"), filed a Petition for Wrongful Death/Survival Damages in the 22nd Judicial District Court for the Parish of St.

---

[1] R. Doc. 64.
[2] R. Doc. 65.
[3] R. Doc. 68.
[4] R. Doc. 72.

Tammany in Louisiana on or about June 5, 2023, asserting wrongful death and survival action claims under Louisiana law based upon the death of their minor daughter, M.A., on June 21, 2022.[5]  Plaintiffs named as defendants The J.M. Smucker Company, Smucker Food Service, Inc., and Walmart, Inc.[6]

According to Plaintiffs, M.A. was born with a chromosomal abnormality which resulted in her having special needs.[7]  She required total care which included part-time caregivers, tutors, and therapists to tend to her needs.[8]  Despite numerous challenges, Plaintiffs assert that M.A. was a playful and loving child.[9]  Plaintiffs allege that M.A. died on June 21,2022 after eating Jif peanut butter contaminated with salmonella that was manufactured, produced, and distributed by Smuckers and sold by Walmart, Inc. (hereafter, "Walmart").[10]  Plaintiffs allege that one of Smuckers' manufacturing facilities for its Jif peanut butter is located in Lexington, Kentucky, and that this facility has had problems with salmonella outbreaks dating back to 2010.[11]  Plaintiffs allege that there was another salmonella outbreak at the facility in February 2022, which was concealed by Smuckers.[12]  Plaintiffs assert that the FDA was notified that individuals were getting sick from salmonella ingestion in May of 2022 and it conducted an investigation, which confirmed that the source of the

---

[5] R. Doc. 10-2 at ¶¶ 5 & 12.

[6] *Id*. at ¶ 1.  The Court notes that Plaintiffs subsequently sought and obtained leave of court to file a First Amended Complaint (R. Docs. 55 & 59).  Plaintiffs First Amending Complaint for Wrongful Death/Survival Damages was filed into the record on April 3, 2024.  (R. Doc. 60).  As this is the operative pleading in this matter, the Court will henceforth refer only to the allegations contained in Plaintiffs' First Amending Complaint for Wrongful Death/Survival Damages.

[7] R. Doc. 60 at ¶¶ 6-7.

[8] *Id*. at ¶¶ 7-8.

[9] *Id*. at ¶ 11.

[10] *Id*. at ¶ 12.

[11] *Id*. at ¶¶ 15-19.

[12] *Id*. at ¶¶ 20-27.

salmonella outbreak was Jif peanut butter produced at Smuckers' Lexington, Kentucky facility.[13]  Plaintiffs allege that the FDA notified Smuckers of its findings in a May 19, 2022 conference call, and that Jif instituted a recall on May 20, 2022 of peanut butter manufactured at the Lexington, Kentucky facility between October 1, 2021 and May 20, 2022.[14]  Plaintiffs contend that Walmart received notice of the recall and had actual knowledge that salmonella-contaminated peanut butter which was part of the recall had been purchased at its stores.[15]

Plaintiffs further allege that on May 5, 2022, Cherie Aduli placed an online order with Walmart through her local Walmart Marketplace, which included three 8-packs of "Jif To Go Creamy Peanut Butter" cups, whose lot numbers matched the contaminated Jif peanut butter lots identified and recalled by Smuckers.[16]  Plaintiffs allege that on June 14, 2022, Cherie Aduli made herself a peanut butter tortilla using an entire cup of the contaminated Jif peanut butter, and that she took a bite of the tortilla and gave the rest of it to M.A. to eat.[17]  Plaintiffs claim that M.A. started experiencing symptoms of salmonella over the next few days, that they took her to the emergency room on June 19, 2024, at which time she was placed in pediatric ICU.[18]  M.A. died on June 21, 2022.[19]

Plaintiffs subsequently filed this suit against Smuckers and Walmart asserting the following causes of action: (1) liability under the Louisiana Products

---

[13] *Id.* at ¶¶ 28-30.
[14] *Id.* at ¶¶ 31-32.
[15] *Id.* at ¶ 34, 37.
[16] *Id.* at ¶¶ 38-39.
[17] *Id.* at ¶¶ 41-42.
[18] *Id.* at ¶¶ 43-48.
[19] *Id.* at ¶ 49.

Liability Act against Smuckers; (2) negligence against Smuckers; (3) negligence against Walmart; and (4) breach of the implied warranty of fitness against Walmart.[20]  Plaintiffs also seek survival damages from Smuckers and Walmart on behalf of M.A. pursuant to La. Civ. Code art. 2315.1(A)(2),[21] and seek wrongful death damages from Smuckers under La. Civ. Code art. 2315.2(A)(2).[22]

Smuckers, with Walmart's consent, removed the matter to this Court on July 14, 2023, on the basis of diversity jurisdiction, 28 U.S.C. § 1332.[23]  The parties participated in a Scheduling Conference with the Court on August 31, 2023 and a Scheduling Order issued with, among other deadlines, trial and pretrial conference dates.[24]  On January 30, 2024, the parties jointly moved to continue the deadlines, including the trial and pretrial conference dates, advising that as discovery proceeded it had become evident that the case involved voluminous documentation and numerous witnesses.[25]  After holding a status conference with the parties, and finding good cause existed to amend the Scheduling Order, the Court granted the joint motion and issued an Amended Scheduling Order.[26]  Trial is now set for February 10, 2025.[27]  On June 4, 2024, Smuckers filed the Motion to Transfer Venue that is before the Court.[28]  The parties' respective arguments are detailed in the Analysis section.

---

[20] *Id*. at ¶¶ 50-89.
[21] *Id*. at ¶¶ 90-93.
[22] *Id*. at ¶¶ 94-96.
[23] R. Doc. 10.
[24] R. Doc. 36.
[25] R. Doc. 48.
[26] R. Docs. 51 & 52.
[27] R. Doc. 52.
[28] R. Doc. 64.

## II.    LEGAL STANDARD

### A. Motion to Transfer Venue

Under 28 U.S.C. § 1404(a), "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  Under § 1404(a), "there exists a threshold inquiry of whether the suit originally could have been brought in the venue where the action is sought to be transferred."[29]  The purpose of § 1404(a) "is to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense."[30]  "The party who files a motion to change venue under section 1404(a) bears the burden of proving why venue should be changed."[31]  To prevail on a motion to transfer venue, the movant must demonstrate that the "balance of convenience and justice *substantially* weighs in favor of transfer."[32]  As explained by the Fifth Circuit, "Transfer under 28 U.S.C. § 1404(a) is properly granted only if the moving party 'clearly establishes good cause' by 'clearly demonstrating that a transfer is for the convenience of parties and witnesses, in the interest of justice.'"[33]  The Fifth Circuit further cautioned that, "That standard is not

---

[29] *U.S. United Ocean Servs., LLC v. Powerhouse Diesel Servs., Inc.*, 932 F. Supp. 2d 717, 722 (E.D. La. 2013) (citing *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004)).

[30] *Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) (internal quotation marks and quotation omitted).

[31] *Reuter v. Jax, Ltd., Inc.*, 251 F.R.D. 231, 235 (E.D. Tex. 2007) (citing *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989)).

[32] *Reuter*, 251 F.R.D. at 235 (quoting *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 768 (E.D. Tex. 2000)) (internal quotation marks omitted) (emphasis in original).

[33] *In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024) (quoting *Def. Distributed v. Bruck*, 30 F.4th 414, 433 (5th Cir. 2022)).

met if the movant merely shows that the transferee venue 'is more likely than not to be more convenient.'"[34]   "Thus, when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected."[35]

A court considering a § 1404(a) motion to transfer must determine whether there is an adequate alternative forum and, if so, decide which forum is best-suited to the litigation by considering a variety of private and public interest factors, giving deference to the plaintiff's choice of forum.[36]   The parties have briefed the private interest factors as: (1) the plaintiff's choice of forum; (2) the convenience of the parties and witnesses; (3) the place of the alleged wrong; (4) the cost of obtaining the attendance of witnesses; (5) the accessibility and location of sources of proof; and (6) the possibility of delay and prejudice if transfer is granted.[37]   The parties list and brief the public interest factors as (1) the administrative difficulties caused by court congestion; (2) the local interest in adjudicating local disputes; (3) the unfairness of burdening citizens in an unrelated forum with jury duty; and (4) the avoidance of

---

[34] *Clarke*, 94 F.4th at 508 (quoting *Bruck*, 30 F.4th at 433).

[35] *Thompson v. Thompson*, 617 F. Supp. 3d 471, 476 (E.D. La. 2022) (quoting *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008)) (internal quotation marks omitted).

[36] *Barnett v. DynCorp Int'l, LLC*, 831 F.3d 296, 300 (5th Cir. 2016) (citing *DTEX, LLC v. BBVA Bancomer, S.A.*, 508 F.3d 785, 794-95 (5th Cir. 2007)).  *See, Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court For Western Dist. of Texas*, 571 U.S. 49, 62-63 & n.6, 134 S.Ct. 568, 581 & n.6, 187 L.Ed.2d 487 (2013).

[37] *See,* R. Doc. 64-1 at pp. 5-6 & 8-9; R. Doc. 65 at pp. 8-17.  Relying on Fifth Circuit precedent, the Court would normally consider the following four private interest factors: (1) the relative ease of access to sources of proof; (2) availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *See, Clarke,* 94 F.4th at 509 (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc)).  The Court finds that the parties' listing and briefing of six private interest factors encompasses these four factors.

unnecessary problems of conflict of laws.[38]  "Ordinarily, the district court would weigh the relevant factors and decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'"[39]  According to the Fifth Circuit, "there is ordinarily a strong presumption in favor of the plaintiff's choice of forum that may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum."[40]

## B. First to File Rule

The "first to file" rule is grounded in the principle of comity which "requires federal district courts—courts of coordinate jurisdiction and equal rank—to exercise care to avoid interference with each other's affairs."[41]  The Fifth Circuit has explained that, "Under the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap."[42]  It is within the district court's discretion in determining whether to apply the "first to file" rule.[43]  "The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the

[38] R. Doc. 64-1 at pp. 6 & 10-12; R. Doc. 65 at pp. 17-19.  Relying on Fifth Circuit jurisprudence, the Court would normally consider as the third public interest factor "the familiarity of the forum with the law that will govern the case."  *Clarke*, 94 F.4th at 509 (quoting *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023)).  The Court will include an analysis of this factor a part of the third public interest factor.

[39] *Atl. Marine*, 571 U.S. at 62-63, 134 S.Ct. at 581 (*citing* 28 U.S.C. § 1404(a)).

[40] *Schexnider v. McDermott Intern., Inc.*, 817 F.2d 1159, 1163 (5th Cir. 1987) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 265, 102 S.Ct. 252, 255, 70 L.Ed.2d 419 (1981)).

[41] *Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947, 950 (5th Cir. 1997) (quoting *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728 (5th Cir. 1985)).

[42] *Int'l Fid. Ins. Co. v. Sweet Little Mexico Corp.*, 665 F.3d 671, 677-78 (5th Cir. 2011) (quoting *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999)) (internal quotation marks omitted).

[43] *Int'l Fid. Ins. Co.*, 665 F.3d at 677 (quoting *Cadle Co.*, 174 F.3d at 603).

authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result."[44]

The first-to-file rule does not require that the cases be identical in nature; rather, a court with the later-filed action may stay an action if the there is "substantial overlap" between the cases.[45] According to the Fifth Circuit, "substantial overlap" exists where the two actions share the same substantive "core issues" and where "much of the proof adduced . . . would likely be identical."[46] "Where the overlap between two suits is less than complete, the judgment is made case by case, based on such factors as the extent of overlap, the likelihood of conflict, the comparative advantage and the interest of each forum in resolving the dispute."[47]

## III.   ANALYSIS

As a threshold matter, the parties seem to agree that this case could have been filed in the Northern District of Ohio, for the reasons set forth in Smuckers' Motion to Transfer.[48] Specifically, the Northern District of Ohio would have diversity jurisdiction over the case, it would have personal jurisdiction over the defendants,[49] and venue would be proper under 28 U.S.C. § 1391 (b)(1) & (c)(2).[50] Plaintiffs do not

---

[44] *Int'l Fid. Ins. Co.*, 665 F.3d at 678 (quoting *Sutter Corp. v. P & P Indus., Inc.*, 125 F.3d 914, 917 (5th Cir. 1997)) (internal quotation marks omitted).

[45] *Int'l Fid. Ins. Co.*, 665 F.3d at 678 (quoting *Save Power Ltd.*, 121 F.3d at 950) (internal quotation marks omitted).

[46] *Int'l Fid. Ins. Co.*, 665 F.3d at 678 (quoting *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24, S. Atlantic and Gulf Coast Dist. of the ILA*, 751 F.2d 721, 730 (5th Cir. 1985) and *Mann Mfg., Inc. v. Hortex Inc.*, 439 F.2d 403, 407 (5th Cir. 1971)) (internal quotation marks omitted).

[47] *Save Power Ltd.*, 121 F.3d at 951 (quoting *TPM Holdings, Inc. v. Intra–Gold Indus., Inc.*, 91 F.3d 1, 4 (1st Cir. 1996)) (internal quotation marks omitted).

[48] *See*, R. Docs. 64-1 & 65.

[49] Smuckers asserts, and Walmart does not dispute, that Walmart would consent to personal jurisdiction in Ohio. *See* R. Doc. 64-1 at p. 7.

[50] *See*, R. Docs. 31, 32, and 33.

contest Smuckers' assertion that the case could have been filed in the Northern District of Ohio.[51]  Thus, the Northern District of Ohio is an "adequate" forum for purposes of  a further 28 U.S.C. § 1404(a) analysis.

Smuckers, however, further argues that the case "could and should have been filed in the Northern District of Ohio."[52]  The question of whether the matter "should have" been filed in the Northern District of Ohio, and whether to transfer the matter to that court, is guided by consideration of a variety of private and public interest factors, as stated above.

### A. Private Interest Factors

After consideration of the parties' arguments, the Court finds as follows on the private interest factors briefed by the parties.[53]

*1. Plaintiff's choice of forum.*

No party disputes that this factor clearly weighs against transfer.  Plaintiffs filed suit in Louisiana and Smuckers concedes this factor weighs against transfer. The Court finds similarly.

*2. Convenience of the parties and witnesses.*

While Smuckers initially argues that this factor weighs in favor of transfer since Smuckers' headquarters and employees are in Ohio, Smuckers fails to address that it is undisputed that the processing plant in question is located in Lexington,

---

[51] *See, generally*, R. Doc. 65.
[52] R. Doc. 64-1 at p. 6.
[53] *See, supra*, note 37.

Kentucky, thus likely necessitating witnesses from Kentucky.[54]  Indeed, in its Reply brief and in response to Plaintiffs' arguments that Ohio would be substantially inconvenient for the Plaintiffs and their witnesses, Smuckers asserts, ironically, that, "their [Smuckers] corporate representative(s) and witnesses, the majority of whom are located in Orville, Ohio or Lexington, Kentucky" would also be inconvenienced.[55] Additionally, Smuckers attached to its Motion the Declaration of Jackie Welch, Vice President of Litigation for Smuckers.[56]  Regarding this factor, the convenience of the parties and witnesses, Ms. Welch advises that four individuals, who are named in the declaration, "from Ohio or Kentucky may have relevant information to the core issues in this case and would be providing testimony" in the various cases already pending against Smuckers in Ohio.[57]  She further asserts that, "the core of Smucker's operations" is located at the company's Orville, Ohio headquarters, that witnesses and  information are located in Orville, and that it would be more convenient and efficient if the Court transferred the case to Northern Ohio.[58]

Plaintiffs assert that this factor weighs in favor of denying transfer, as Smuckers "ignores that the manufacturing facility at issue is located in Lexington, Kentucky—not Orville, Ohio.  This is the location where the salmonella contamination occurred and where the witnesses with the most important

---

[54] *See* R. Doc. 64-4 at  ¶ 3 & R. Doc. 64-5 at ¶ 3 ("I understand that this case relates to the voluntary recall that Smucker publicly announced after learning of possible salmonella contamination in certain of its Jif® peanut butter products from a facility in Lexington, Kentucky.").
[55] R. Doc. 68 at p. 8.
[56] R. Doc. 64-5.
[57] *Id*. at ¶ 7.
[58] *Id*. at ¶ 8.

information will be located."[59]   Plaintiffs further point out that Smuckers and Walmart are large corporations with vast resources, while Plaintiffs would be extremely inconvenienced if forced to litigate in Ohio.[60]   In support, Plaintiffs each provided a declaration advising of various hardships they would encounter if the matter were transferred to Ohio.[61]   Cherie Aduli's declaration provides detailed information about the needs of the family's other two children and advises that, "our business responsibilities, combined with the intense demands of caring for medically complex children, make traveling to Ohio a significant and unnecessary hardship."[62] Her declaration further provides information regarding M.A.'s healthcare and special needs providers who would have to travel to Ohio if the matter were transferred.[63] Plaintiffs also provided a copy of their discovery responses to interrogatories and requests for production, wherein Plaintiffs were asked to identify each healthcare provider who provided treatment to M.A.[64]   In response, Plaintiffs listed and identified 13 Louisiana-based healthcare providers, and provided M.A.'s medical records.[65]

Having considered the parties' arguments, the Court acknowledges that, while Louisiana may be slightly inconvenient for Smuckers and Walmart, entities who are not citizens of Louisiana, the Northern District of Ohio would be an extremely inconvenient forum for the Plaintiffs and their non-party witnesses.  The Court bases

---

[59] R. Doc. 65 at p. 9.
[60] *Id.* at pp. 9-11.
[61] *See,* R. Docs. 65-2 & 65-3.
[62] R.Doc. 65-2 at ¶¶ 5-8 & 17.
[63] *Id.* at ¶¶ 9-13.
[64] R. Doc. 65-4.
[65] *Id.* at pp. 8-9.  Plaintiffs advise that one of the healthcare providers is deceased.  *Id.* at p. 8.

this determination on the unique needs of the Plaintiffs' minor children, Dr. Aduli's job, and obtaining the trial testimony of numerous Louisiana based third-party witnesses, including M.A.'s many treating physicians, some of whom are listed in Plaintiffs' discovery responses and others who are listed in Plaintiffs' Opposition brief, fact witnesses, and experts.  Plaintiffs also aver that there is a long list of the medical personnel who treated M.A. during the time from when she is alleged to have consumed the peanut butter until her death, all of whom would have to travel from Louisiana to Ohio.[66]  Smuckers fails to address or respond to the affidavits from Plaintiffs regarding Plaintiffs' work obligations and Plaintiffs' obligations to tend to the special needs of their family.  The Court finds that this factor also weighs against transfer.

      *3.  Place of the alleged wrong.*

This factor clearly weighs against transfer.  Smuckers concedes that the alleged wrongdoing and injury to M.A. occurred in Louisiana and that this factor weighs against transfer.[67]

      *4.  The cost of obtaining the attendance of witnesses.*

Smuckers contends that this factor weighs in favor of transfer, arguing that, "Smuckers witnesses, both party and non-party are already located in Northern Ohio."[68]  Smuckers acknowledges that, "some of" Plaintiffs' witnesses may be in Louisiana, but argues that the cost associated with obtaining those witnesses would

---

[66] R. Doc. 65 at p. 11.
[67] R. Doc. 64-1 at p. 9.
[68] *Id.*

remain minimal.[69]  Smuckers also offers that it is prepared to take depositions of Plaintiffs' witnesses by remote means, as warranted.[70]  The Court again considers the exhibit provided by Smuckers, the Declaration of  Jackie Welch, Vice President of Litigation for Smuckers.[71]  Regarding this factor, the cost of obtaining the attendance of witnesses, Ms. Welch advises that four individuals, who are named in the declaration, "from Ohio or Kentucky may have relevant information to the core issues in this case and would be providing testimony. . ."[72]  As previously mentioned, she further asserts that the core functions of the Smuckers operations is located at the company's Orville, Ohio headquarters and that witnesses and information are located in Orville.[73]

Plaintiffs counter that the Fifth Circuit has adopted the "100 mile rule" to assist in the analysis of this factor, advising that, "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."[74]  Plaintiffs point out that the Northern District of Ohio is more than a 1,000 mile-drive from the Plaintiffs' residence and other third-party witnesses located in Louisiana.[75]     Smuckers, in reply, advises that it "can make the same argument" and points out that its witnesses

---

[69] *Id.*
[70] *Id.*
[71] R. Doc. 64-5.
[72] *Id.* at ¶ 7.
[73] *Id.* at ¶ 8.
[74] R. Doc. 65 at p. 14 (quoting *In re Volkswagen of America, Inc.* 545 F.3d 304, 317 (5th  Cir. 2008)) (internal quotation marks omitted).
[75] R. Doc. 65 at pp. 14-15.

located in Ohio and Kentucky will also be inconvenienced.[76]  In considering this factor Plaintiffs further assert that the costs that they would incur to secure the voluntary attendance of so many medical professionals, many of whom they list in their brief and exhibits, in Ohio would likely be exorbitant.[77]  Addressing Smuckers' assertion that costs would be "minimal" because the parties can rely on deposition testimony, Plaintiffs assert that the absence of live trial testimony from witnesses outside the subpoena power will hurt Plaintiffs' case more than it will hurt Smuckers' case.[78]

The Court agrees with Plaintiffs.  While the Court appreciates that Smuckers has offered to take the depositions of the non-party witnesses virtually, that offer does not fully address the cost of the witnesses' attendance at trial.  The Court further notes that, while Plaintiffs identified by name and occupation numerous non-party witnesses in their briefing, Smuckers only identified four witnesses, and of the four, only three are located in Ohio.  Additionally, and as Plaintiffs point out, Smuckers has failed to present any evidence of the willingness of the third-party witnesses to appear at trial, or the cost of attendance for those willing witnesses, who fall outside of the subpoena power of the Northern District of Ohio.[79]  The Court finds that the cost to Plaintiffs—in obtaining the non-party witnesses' testimony at trial—far exceeds any cost to Smuckers in obtaining the attendance of non-party witnesses.  As

---

[76] R. Doc. 68 at p. 8.

[77] R. Doc. 65 at p. 15.

[78] *Id.*

[79] *See, In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("The private concerns include: (1) the relative ease of access to sources of proof; (2) *the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses*; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive.") (citation omitted) (emphasis added).

such, this factor weighs against transfer.

     5.  *The accessibility and location of sources of proof.*

In its Motion to Transfer Venue, Smuckers contends that, "Defendants' headquarters are in the Northern District of Ohio, meaning that the decisions, actions, and individuals relevant to Plaintiffs' allegations are all also located in the Northern District of Ohio."[80]  Curiously, in its Reply brief, Smuckers acknowledges that it has witnesses and exhibits in Lexington, Kentucky.[81]  Smuckers asserts that, "although Plaintiffs argue that the Smucker plant at issue is located in Kentucky, and therefore, a source of proof is in Kentucky, Kentucky is <u>not</u> Louisiana."[82] Smuckers further advises that Walmart has consented to the transfer, but concedes that, "Walmart's witnesses aren't located in Ohio."[83]

It is uncontested that the manufacturing facility at issue is located in Lexington, Kentucky, and it is likely that a significant portion of exhibits and witnesses will be located there.[84]  To the extent that Smuckers has argued that, "Kentucky is <u>not</u> Louisiana," the Court points out that Kentucky is not Ohio, either. Smuckers' statement  misses the point of this factor and the "accessibility and sources and locations or proof."  As discussed, some of Smuckers' witnesses may be in Ohio,

---

[80] R. Doc. 64-1 at pp. 8-9.
[81] *See,* R. Doc. 68 at p. 8 ("However, Defendants can make the same argument related to their corporate representative(s) and witnesses, the majority of whom are located in Orville, Ohio or Lexington, Kentucky.").
[82] *Id.* at p. 9 (emphasis in original).
[83] R. Doc. 64-1 at p. 9.
[84] *See* R. Doc. 64-4 at ¶ 3 & R. Doc. 65-5 at ¶ 3 ("I understand that this case relates to the voluntary recall that Smucker publicly announced after learning of possible salmonella contamination in certain of its Jif® peanut butter products from a facility in Lexington, Kentucky.").

while others are likely in Kentucky.[85]  Sources of proof for Smuckers, therefore, may be in Ohio or Kentucky.  According to Ms. Welch's Declaration, "A substantial volume of potentially relevant documents and data for the issues that are at the core of this case can be found within and/or are most effectively obtained from Smucker's headquarters in Orrville, Ohio."[86]  She further explains that, "This includes documents and data stored on or within servers, network shares, hard copy storage locations, physical storage devices, or preserved product samples located either in Orrville, Ohio, or within close proximity thereto."[87]  Thus, Smuckers sources of proof appear to include, at least somewhat, electronically stored information that is equally accessible from Louisiana and Ohio.

Smuckers further asserts that the core of its operations is located at the company's headquarters in Orville, Ohio.[88]  While sources of proof for Walmart may be at its corporate headquarters in Arkansas, neither Smuckers nor Walmart offer any argument or evidence as to Walmart's sources of proof.  In contrast, Plaintiffs argue that they have numerous witnesses – f act, medical, and expert –, located in Louisiana, and that all of M.A.'s extensive previous medical treatment was performed in Louisiana.  To the extent that that prior treatment is deemed relevant, that evidence is also in Louisiana.  The Court acknowledges Plaintiffs' arguments regarding this factor, but finds that many of their arguments go more towards

---

[85] The Court notes that Walmart's witnesses and sources of proof may well be at Walmart's corporate headquarters in Arkansas.  *See,* R. Doc. 33.  The parties agree that at least some of Walmart's witnesses will be from outside Ohio.  *See*, R. Doc. 64-1 at p. 9; R. Doc. 65 at p. 9.

[86] R. Doc. 64-5 at ¶ 6.

[87] *Id.*

[88] *Id.* at ¶ 8.

consideration of the second factor, the convenience of the parties and witnesses, and the fourth factor, the cost of obtaining the attendance of witnesses, instead of the fifth factor. The Court therefore finds that this factor is either neutral or weighs slightly in favor of transfer.

### 6. The possibility of delay and prejudice if transfer is granted.

Smuckers contends that the case "will move through the court system just as, if not more, expeditiously in Ohio than it would in Louisiana."[89] Smuckers then argues that this factor weighs in favor of transfer. The Court disagrees. As Plaintiffs point out, Plaintiffs filed this case on or about June 5, 2023,[90] and Smuckers removed the case to this Court on July 13, 2023.[91] Smuckers waited until June 4, 2024, almost exactly a year later, to file the instant Motion to Transfer.[92] Smuckers has given absolutely no explanation or reason whatsoever for the late filing of this motion, likely because none exists. The parties have been aware of Smuckers' corporate home, as well as the issues with the manufacturing plant in Lexington, Kentucky, since well before the filing of this lawsuit. Further, Smuckers has been aware that Plaintiffs have tied their claims to the issues at the Lexington, Kentucky plant since the filing of the lawsuit in June 2023.[93] Indeed, the parties discussed issues related to discovery from the Kentucky plant and a possible inspection of the plant during the Court's first status conference held in October 2023.[94]

---

[89] R. Doc. 64-1 at p. 10.
[90] R. Doc. 10-2.
[91] R. Doc. 10.
[92] R. Doc. 64.
[93] *See,* R. Doc. 10-2 at ¶¶ 13-33 & 37-49; R. Doc. 60 at ¶¶ 13-33 & 38-49.
[94] R. Doc. 42.

Now, a year after the filing of the lawsuit, a second trial date is set—a trial date which has already been continued once by joint motion.[95]  Discovery is ongoing. Granting a transfer at this time would undoubtedly cause further delay.  The Court feels compelled to point out, again, that Smuckers has not provided any explanation whatsoever for the filing of this motion a year after it removed the case to this Court. The Court further finds that, for the reasons set forth above, Plaintiffs would be prejudiced if this matter were transferred to Ohio.  Accordingly, this factor weighs against transfer.

As explained above, the Court finds that five of the private interest factors weigh against transfer and one is either neutral or weighs slightly in favor of transfer. The Court now turns to consideration of the public interest factors.

### B. Public Interest Factors

*1. The administrative difficulties caused by court congestion.*

Smuckers relies on "statistical data found on the U.S. Courts website," namely the total number of cases pending in the Northern District of Ohio and in the Eastern District of Louisiana and the disposition time for cases in each district as of December 31, 2023, to argue that this factor falls in favor of transfer.[96]  Plaintiffs point out that the data relied upon by Smuckers is misleading because a substantial portion of this Court's docket is Hurricane Ida litigation, which is subject to the Streamlined Settlement Process that largely leads to matters resolving without substantial court

---

[95] *See,* R. Docs. 48, 51, and 52.
[96] R. Doc. 64-1 at p. 11.

involvement.[97]  Plaintiffs also assert that  many of those cases have settled since December 31, 2023.[98]  While Plaintiffs are correct in stating that many of the cases on this Court's docket are Hurricane Ida cases, those cases, too, take up the Court's time and attention.  The statistics speak for themselves—this Court has a larger caseload.[99]  Accordingly, the Court determines that this factor is neutral, or weighs slightly in favor of transfer.

2.  *The local interest in adjudicating local disputes.*

Smuckers concedes that, "Louisiana has an interest in this lawsuit because some of the events giving rise to the suit, e.g., the alleged purchase and damages, occurred in Louisiana."[100]  With that said, Smuckers also argues that, "some of the alleged events giving rise to this lawsuit happened in Ohio, i.e., decisions related to the creation and/or distribution of the peanut butter at issue," and then concludes that this factor weighs in favor of transfer.[101]  Plaintiffs challenge Smucker's position, arguing that, "Smuckers is a corporation that ships product across the country, around the globe, and also has facilities throughout the country," while Plaintiffs are a family from Louisiana whose child allegedly died as a result of a defective product and, therefore, Louisiana has a "keen interest in litigating the case."[102]

The Court recognizes Ohio's interest in this litigation, but in weighing this

---

[97] R. Doc. 65 at pp. 17-18.
[98] *Id.* at p. 17.
[99] With that said, the Court would be remiss not to point out that it already has a second trial date set in this case, and that the first trial date was moved at the request of the parties, not as a result of any court congestion.
[100] R. Doc. 64-1 at p. 11.
[101] *Id.* at pp. 11-12.
[102] R. Doc. 65 at p. 18.

factor, the Court determines that Louisiana's interest in adjudicating this dispute, which involves the death of a Louisiana citizen based upon events that occurred in Louisiana, outweighs any interest Ohio may have in litigating a case involving business entities that have their principal places of business and/or headquarters in Ohio.  The Court therefore finds that this factor weighs strongly against transfer.

    *3.  The unfairness of burdening citizens in an unrelated forum with jury duty.*

Having considered the parties' arguments as to this factor,[103] the Court finds that this factor is neutral.  Citizens in judicial forums throughout the country take up and consider cases involving citizens from other states on a daily basis.  While "jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation,"[104] both the proposed transferee venue and the current venue have a connection to the litigation.  Neither the citizens of Louisiana nor those of Ohio would be unfairly burdened if chosen for jury duty in this matter.

The Court further considers "the familiarity of the forum with the law that will govern the case."[105]  Consideration of this factor does not impact or change the Court's analysis.  While federal courts routinely apply the laws of individual states, this Court would be most familiar with the Louisiana laws applicable to Plaintiffs' claims, especially Plaintiffs' request for damages under Louisiana's survival action and

---

[103] R. Doc. 64-1 at p. 12; R. Doc. 65 at p. 18.
[104] *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508–09, 67 S.Ct. 839, 91 L.Ed. 1055 (1947).
[105] *See, In re Volkswagen AG,* 371 F.3d 201, 203 (5th Cir. 2004) ("The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; *(3) the familiarity of the forum with the law that will govern the case*; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law.") (emphasis added and citation omitted)).

wrongful death statutes.[106]  The Court finds this consideration is either neutral or weighs slightly against transfer.

> ### 4. *The avoidance of unnecessary problems in conflict of laws.*

Smuckers contends that this factor is "neutral to transfer,"[107] while Plaintiffs contend that it may "slant slightly in Plaintiffs' favor."[108]  No party really contests that federal courts are often called upon to apply the laws of other states and are equally capable of doing so.  The Court finds this factor to be neutral, as both districts are capable of conducting a conflict of laws analysis.

Based on the foregoing, the Court finds that while two of the public interest factors are neutral, one weighs strongly against transfer and another weighs slightly against transfer.  Thus, the public interest factors weigh against transfer.

Considering the fact that a majority of the public and private interest factors weigh against transferring this matter to the Northern District of Ohio, the Court finds that Smuckers has  failed to carry its burden of demonstrating that the "balance of convenience and justice *substantially* weighs in favor of transfer."[109]  As explained by another Section of this Court, "when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected."[110]  Here, the transferee venue, Ohio, is not clearly more convenient than

---

[106] *See,* R. Doc. 60.

[107] R. Doc. 64-1 at p. 12.

[108] R. Doc. 65 at pp. 18-19.

[109] *Reuter v. Jax, Ltd., Inc.*, 251 F.R.D. 231, 235 (E.D. Tex. 2007) (quoting *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 768 (E.D. Tex. 2000)) (internal quotation marks omitted) (emphasis in original).

[110] *Thompson v. Thompson*, 617 F. Supp. 3d 471, 476 (E.D. La. 2022) (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008)) (internal quotation marks omitted).

the venue chosen by the plaintiffs, Louisiana, nor would the interest of justice would be served by the transfer of this matter to the Northern District of Ohio.

### C. First to File Rule

In addition to relying on the public and private interest factors, Smuckers argues that this Court should transfer this case to the Northern District of Ohio under the "first-to-file" rule.[111]  Smuckers advises that:

> [T]his is just one of several cases filed after Smucker announced a recall of the Products. *Kraljevich v. The J. M. Smucker Co.*, No. 5:22-cv-00134 (E.D. Ky.) was filed on May 25, 2022; *Ward v. The J. M. Smucker Co.*, No. 5:22-cv-00885 (N.D. Ohio) was filed on May 26, 2022; *Bopp v. The J. M. Smucker Co.*, No. 2:22-CV-1812 (D.S.C.) was filed on June 8, 2022; and *Ferguson v. The J. M. Smucker Co.*, No. 5:22-cv-00173 (E.D. Ky.) and *Pisciotti v. The J. M. Smucker Co.*, No. 5:22-cv-01151 (N.D. Ohio) were filed on June 29, 2022.  The cases filed in Kentucky and South Carolina were transferred to the Northern District of Ohio, and all five cases were consolidated [by the Northern District of Ohio court] on September 9, 2022 under the case number associated with *Ward*, Case No. 5:22-cv-0085 (the "Consolidated Case").[112]

Smuckers further advises that "two other 2023 cases, *Cook v. The J.M. Smucker Co., et al.*, Case No. 0:23-cv-00242 (D.S.C.) and *Hollis v. The J.M. Smucker Co.,* Case No. 1:23-cv-05239 (N.D. Ill.), were recently transferred to the Northern District of Ohio."[113]  Smuckers asserts that this matter should be transferred to the Northern District of Ohio under the first-to-file rule because it is a defendant in all of the foregoing cases and there is substantial overlap in the cases, as "each case involves claims for negligence, strict product liability, and breach of the implied

---

[111] R. Doc. 64-1 at pp. 6 & 12-14.

[112] *Id*. at pp. 3-4.

[113] *Id*. at p. 4.

warranty of merchantability or fitness."[114]

In response, Plaintiffs clarify that, "Importantly, at the present time, the only lawsuits currently pending in the Northern District of Ohio are two individual actions against Smucker: *Cook* and *Hollis*.  Both [of] these lawsuits were initially filed in separate forums.  The Consolidated Class Actions have been dismissed."[115]  Plaintiffs then argue that the Court should exercise its discretion by not applying the first-to-file rule because it does not appear that the issues in this case substantially overlap with those in the two cases pending in the Northern District of Ohio, *Cook* and *Hollis*.[116]  Plaintiffs contend that, "The only similarity in this case and the *Cook/Hollis* cases is that Smuckers' is a defendant due to its manufacture of salmonella contaminated peanut butter.  Otherwise, the cases are all different."[117]  Plaintiffs further assert that, "Each case involves completely unrelated party plaintiffs in different parts of the country.  Each case involves individual circumstances of product manufacture, purchase, consumption, and damages."[118]  Plaintiffs also point out that, to their knowledge, this is the only death case being litigated in connection with Smuckers and, therefore, this case will require its own proof.[119]

In response, Smuckers rebuts Plaintiffs' arguments regarding no substantial overlap by again asserting that the cases "all concern the plaintiffs' claims against

---

[114] *Id.* at pp. 4-5 & 13.
[115] R. Doc. 65 at pp. 19-20.
[116] *Id.*
[117] *Id.* at p. 20.
[118] *Id.*
[119] *Id.* at p. 21.

Smucker sounding in product liability and negligence, for alleged *Salmonella* poisoning stemming from consumption of Jif® peanut butter related to Smucker's May 2022 voluntary recall."[120]  Smuckers also advises that there are four other cases pending in various federal courts, and that it will be filing motions to transfer those cases to the Northern District of Ohio, as well.[121]

Smuckers does not address the fact that neither *Cook* nor *Hollis* involve claims that someone died from ingesting the tainted Jif peanut butter.  Smuckers likewise does not mention the fact that this is the only case involving wrongful death and survival action claims, both of which are brought under Louisiana law.  The parties agree that between *Cook, Hollis,* and the instant case, the *Cook* matter was filed the earliest, on December 13, 2022.[122]  In contrast, *Hollis* was filed on May 31, 2023,[123] and Plaintiffs filed this suit on or about June 5, 2023.[124]

The issue before the Court is whether the issues raised in this case "substantially overlap" with those of the *Cook* case so as to warrant transfer of this matter to the Northern District of Ohio.  "In deciding if a substantial overlap exists, [the Fifth Circuit] has looked at factors such as whether 'the core issue . . . was the same' or if 'much of the proof adduced . . . would likely be identical.'"[125]  As explained

---

[120] R.Doc. 68 at p. 2.
[121] *Id.* at p. 2, n.2 (citing *Veronica Green v. J.M. Smucker LLC*, Civ. A. No. 3:23-cv-00289 (W.D. Ky); *Wayne and Molly Hinkin v. The J.M. Smucker Company, et. al.*, Civ. A. No. 3:24-cv-00063 (M.D. Pa.); *R.F., a Minor Child, by and through Briana Rodriguez, as Next Friend,  v. The J.M. Smucker Company*, Civ. A. No. 1:24-cv-00353 (W.D. Tx); *Beth Mullins v. The J.M. Smucker Company*, Civ. A. No. 4:24-cv-507 (N.D. Tx)).
[122] R. Doc. 65 at p. 6; R. Doc. 68 at p. 4.
[123] R. Doc. 65 at p. 6; R. Doc. 68 at p. 4.
[124] R. Doc. 10-2.
[125] *Gateway Mortg. Group, LLC v. Lehman Bros. Holdings, Inc.*, 694 Fed.Appx. 225, 227 (5th Cir. 2017) (quoting *Int'l Fid. Ins. v. Sweet Little Mex. Corp.*, 665 F.3d 671, 678 (5th Cir. 2011)).

by the Fifth Circuit, "The first-to-file rule, by contrast, is essentially a forward-looking doctrine. Courts use this rule to maximize judicial economy and minimize embarrassing inconsistencies by prophylactically refusing to hear a case raising issues that might substantially duplicate those raised by a case *pending* in another court."[126]

The Court finds that substantial overlap does not exist between this case and the *Cook* case. To begin with, the only party who is a party in both cases is Smuckers; all of the plaintiffs are different and Walmart is not a party in the *Cook* case.[127] Additionally, Target is named as a defendant in the *Cook* case, but Target is not a defendant in the instant case.[128] With that said, the Court recognizes that that issue is not dispositive of the matter. The plaintiff in *Cook* asserts claims for negligence and breach of warranty.[129] In the matter before the Court, Plaintiffs assert negligence and breach of warranty claims, as well as a claim under the Louisiana Products Liability Act, and seek damages under Louisiana's survival action and wrongful death statutes.[130]

Turning to the "core" of the factual issues, the plaintiff in *Cook* alleges that she purchased Smuckers products from a Target store and, after consuming them, began to experience symptoms of a salmonella infection, including vomiting, diarrhea, and abdominal pain.[131] The plaintiff sought medical treatment, was diagnosed with a

---

[126] *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999) (emphasis in original).
[127] *See,* R. Doc. 1 in *Cook v. The J.M. Smucker Co., et al.*, Civ. A. No. 0:23-cv-00242 (D.S.C.).
[128] *Id.*
[129] *Id.*
[130] *See,* R. Doc. 60.
[131] *See,* R. Doc. 1 in *Cook v. The J.M. Smucker Co., et al.*, Civ. A. No. 0:23-cv-00242 (D.S.C.).

salmonella infection, and was prescribed medication to treat her condition.[132]  Here, Plaintiffs allege that they purchased peanut butter from Walmart, that M.A. ate it, and that it caused her death. Importantly, whether the *Cook* plaintiff is able to prove her claim—or not—does not determine whether the Plaintiffs in this matter are able to prove their case.  To put it in the words of the Fifth Circuit, a decision by the factfinder in *Cook* that differs from the decision by the factfinder in this matter does not necessarily result in an "embarrassing inconsistency."[133]  Simply because other plaintiffs have brought claims alleging that they were harmed by a product does not require a "uniform result."[134]

Indeed, such a finding that a "uniform result" would be needed in products liability cases would turn the judicial system on its head and alleviate any plaintiff from its burden of proof.  Each plaintiff has asserted particular facts which they will have to prove.  By way of limited example, those facts include whether the plaintiff purchased Smuckers products, whether those products were consumed by the plaintiff, whether those products were contaminated, and individual damages, including the extent of any illness suffered by the plaintiff.  In *Cook*, plaintiff will have to prove that Target had knowledge of the contaminated peanut butter.  In this case, Plaintiffs will have to establish that Walmart had knowledge of the contaminated peanut butter.  Smuckers has not shown that the proof needed for the

---

[132] *Id.*

[133] *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 604 (5th Cir. 1999).

[134] *See, Id.* at 603 (explaining that, with respect to the first-to-file rule, "The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result.") (quotation and internal quotation marks omitted).

*Cook* case that is pending in the Northern District of Ohio is identical to the proof needed in this matter.[135]  These individual factual determinations to be made in each case cut against the Court finding that the issues raised by the cases "substantial overlap."  Accordingly, the Court exercises its discretion to decline to transfer the matter under the first to file rule.[136]

Finally, Smuckers filed a Motion to Stay Pending A Decision/Order on the Motion to Transfer Venue, requesting a stay of discovery to allow for the resolution of the Motion to Transfer Venue.[137] The Court has now ruled on that Motion to Transfer Venue, making any request to stay discovery moot.

## IV.    CONCLUSION

**IT IS HEREBY ORDERED** that the Motion to Transfer Venue Pursuant to 28 U.S.C. §1404(A)[138]  is **DENIED.**

**IT IS FURTHER ORDERED** that the Motion to Stay Pending A Decision/Order on the Motion to Transfer Venue[139] is **DENIED as MOOT.**

New Orleans, Louisiana, July 30, 2024.

**WENDY B. VITTER**
**United States District Judge**

---

[135] Significant distinctions exist between this matter and the *Hollis* matter as well, such that it likewise does not "substantially overlap" with this matter.  For instance, *Hollis* involves a separate plaintiff who claims that he and his son "became ill" after eating Smuckers products, there is no death claim, Walmart is not a party, and the *Hollis* plaintiff asserts a claim under the Illinois Consumer Fraud and Deceptive Trade Practices Act.  *See*, R. Doc. 1 in *Hollis v. The J.M. Smucker Co.*, Civ. A. No. 1:23-cv-05239 (N.D. Ill.).

[136] To be clear, even if it were determined that there is substantial overlap in the issues raised in the two cases, the Court would decline to exercise its discretion to transfer the matter under the first-to-file rule based on its review of the 28 U.S.C. § 1404(a) factors, which overwhelmingly weigh against transfer.

[137] R. Doc. 72.

[138] R. Doc. 64.

[139] R. Doc. 72.